Argued and submitted July 17, 2013, OAR 811-015-0036 held invalid
January 23, 2014

OREGON ASSOCIATION OF ACUPUNCTURE
AND ORIENTAL MEDICINE,
Alfred Thieme, and E. Christo Gorawski,
*Petitioners,*

*v.*

BOARD OF CHIROPRACTIC EXAMINERS,
*Respondent,*

*and*

UNIVERSITY OF WESTERN STATES
and John L. V. Platt, D.C., P.C.,
dba Woodstock Chiropractic Clinic,
*Intervenors-Respondents.*

Board of Chiropractic Examiners
A148924

320 P3d 575

Patrick T. Foran argued the cause for petitioners. With him on the briefs were Thane W. Tienson and Landye Bennett Blumstein LLP.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

James E. Mountain, Jr., argued the cause for intervenor-respondent University of Western States. With him on the brief were Jona J. Maukonen, Frank A. Moscato, and Harrang Long Gary Rudnick P.C.

Andrew T. Reilly and Black Helterline LLP filed the brief for intervenor-respondent John L. V. Platt, D.C., P.C., dba Woodstock Chiropractic Clinic.

Before Schuman, Presiding Judge, and Duncan, Judge, and Tookey, Judge.*

TOOKEY, J.

---

* Tookey, J., *vice* Wollheim, J.

**TOOKEY, J.**

Petitioners challenge the validity of OAR 811-015-0036, a rule adopted by the State Board of Chiropractic Examiners (the board) that authorizes chiropractic physicians to perform "dry needling." Petitioners assert that the rule exceeds the board's statutory authority, and they make several arguments to support that contention. We address only petitioners' first argument—that the challenged rule authorizes a technique that is not encompassed within the practice of "chiropractic," as defined by ORS 684.010(2)—which is dispositive. Because we conclude that dry needling does not fall within the practice of chiropractic, we declare OAR 811-015-0036 invalid.

Under ORS 183.400(1), "any person" may petition this court to determine the validity of a rule. In reviewing a rule challenge under that statute, we may declare the rule invalid only if we conclude that it violates constitutional provisions, exceeds the statutory authority of the agency that adopted the rule, or was adopted without complying with rulemaking procedures. ORS 183.400(4). Here, petitioners do not argue that OAR 811-015-0036 is unconstitutional or that its adoption was procedurally flawed; they assert only that the rule exceeds the board's statutory authority.

To determine whether a challenged rule exceeds the agency's statutory authority, we may consider only "the wording of the rule itself (read in context) and the statutory provisions authorizing the rule." *Wolf v. Oregon Lottery Commission*, 344 Or 345, 355, 182 P3d 180 (2008) (citing ORS 183.400(3)(a), (b)). Based on those sources, we consider whether the agency's adoption of the rule exceeded the authority granted by statute and, further, whether the agency "departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute." *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984). In making that determination, we seek to discern the legislature's intent by examining the text and context of the relevant statutes and, if useful to the analysis, pertinent legislative history. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (describing statutory analysis).

We begin with the statutory provisions authorizing the board to adopt rules related to the practice of chiropractic in Oregon. The board has the authority "[t]o enforce the provisions of [ORS chapter 684] and to exercise general supervision over the practice of chiropractic within this state," ORS 684.155(1)(b) and "shall from time to time adopt such rules as it deems proper and necessary for the administration of this chapter and the performance of its work," ORS 684.150(1). Thus, for the board to adopt a valid rule under ORS chapter 684, the rule must relate to the practice of "chiropractic." ORS 684.010(2) defines "chiropractic" as

"(a) That system of adjusting with the hands the articulations of the bony framework of the human body, and the employment and practice of physiotherapy, electrotherapy, hydrotherapy and minor surgery.

"(b) The chiropractic diagnosis, treatment and prevention of body dysfunction; correction, maintenance of the structural and functional integrity of the neuromusculoskeletal system and the effects thereof or interferences therewith by the utilization of all recognized and accepted chiropractic diagnostic procedures and the employment of all rational therapeutic measures as taught in approved chiropractic colleges."

Here, the challenged rule defines dry needling and explicitly states that the technique falls within the statutory definition of "chiropractic." The rule provides, in relevant part,

"Dry needling is within the chiropractic physicians [*sic*] scope of practice for the treatment of myofascial trigger-point [*sic*] pursuant to ORS 684.010(2).

"(1) Dry Needling is a technique used to evaluate and treat myofascial trigger points that uses a dry needle, without medication, that is inserted into a trigger point that has been identified by examination in accordance with OAR 811-015-0010 with the goal of releasing/inactivating the trigger points, relieving pain and/or improving function."

OAR 811-015-0036. Petitioners argue that dry needling does not fall within the statutory definition of "chiropractic" under ORS 684.010(2)(a) because it does not fall within any of the enumerated categories of treatment. Further, petitioners

argue that, because dry needling does not fit within the definition of "chiropractic" in subsection (a), it cannot fall within the definition of *"chiropractic* diagnosis, treatment and prevention of body dysfunction" under subsection (b). (Emphasis added.) Respondents argue that dry needling fits within the statutory definition of "chiropractic" because it is a form of "physiotherapy" under ORS 684.010(2)(a),[1] and it is performed for the "treatment and prevention of body dysfunction" under subsection (b).

As noted, when interpreting a statute, we seek to discern the legislature's intent by examining the text and context of the statute and, if useful to the analysis, pertinent legislative history. *Gaines*, 346 Or at 171-72. The question here is whether dry needling falls within the definition of "chiropractic" under ORS 684.010(2)(a) as a form of "physiotherapy." We begin by observing that the term "physiotherapy" was added to the law as an amendment in 1927, and there is no available legislative history relating to that amendment. However, based on the statute's text and context, we conclude that the dry needling technique does not fall within the intended meaning of "physiotherapy."

The term "physiotherapy" is not defined in ORS chapter 684 or other related statutes; thus, dictionary definitions can help us discern the term's plain, natural and ordinary meaning. *See Gaines*, 346 Or at 175. When "interpreting the words of a statute enacted many years ago, we may seek guidance from dictionaries that were in use at the time." *State v. Perry*, 336 Or 49, 53, 77 P3d 313 (2003); *see also Hopkins v. SAIF*, 349 Or 348, 360-64, 245 P3d 90 (2010) (interpreting the statutory term "arthritis" using *Webster's Third New Int'l Dictionary* and medical dictionaries that were in use when the statutory provision was enacted).

---

[1] Respondents do not contend that dry needling involves "adjusting with the hands the articulations of the bony framework of the human body" or that it is a form of electrotherapy, hydrotherapy, or minor surgery. ORS 684.010(2)(a). The term "[m]inor surgery" is defined as "the use of electrical or other methods for the surgical repair and care incident thereto of superficial lacerations and abrasions, benign superficial lesions, and the removal of foreign bodies located in the superficial structures; and the use of antiseptics and local anesthetics in connection therewith." ORS 684.010(5).

Citing *Webster's Third New Int'l Dictionary*, respondents assert that the term "physiotherapy" is synonymous with "physical therapy." *See Webster's Third New Int'l Dictionary* 1707 (unabridged ed 2002) (defining "physiotherapy" as ": PHYSICAL THERAPY"). Respondents point out that the term "physical therapy" is defined by *Webster's* as "the treatment of disease by physical and mechanical means (as massage, regulated exercise, water, light, heat, electricity)." *Id.* Based on that definition, respondents assert, without further explanation, that "[d]ry needling falls within the category of treatment by physical or mechanical means, *i.e.*, of physiotherapy."

As noted, the term "physiotherapy" was added to the law in 1927. At that time, *The American Illustrated Medical Dictionary* defined "physiotherapy" as "[t]he use of natural forces, such as light, heat, air, water, and exercise, in the treatment of disease." W. A. Newman Dorland, *The American Illustrated Medical Dictionary* 801 (11th ed 1922). Similarly, *A Practical Medical Dictionary* defined "physiotherapy" as "physiatrics," which in turn was defined as "[t]he use of natural forces in the treatment of disease." Thomas Lathrop Stedman, *A Practical Medical Dictionary* 775, 774 (7th rev ed 1922). Those definitions would suggest that physiotherapy uses "natural forces" similar to "light, heat, air, water, and exercise."[2]

We now turn to the context of the statute. Petitioners contend that dry needling cannot lawfully be considered physiotherapy in Oregon because physical therapists in this state are not authorized to practice that technique. The essence of petitioners' argument is that, because the term "physiotherapy" is synonymous with "physical therapy," the statutes regulating the practice of physical therapy in Oregon, set forth in ORS chapter 688, provide helpful context for interpreting the term "physiotherapy" in ORS 684.010(2)(a). In this instance, we decline to consider the definitions and rules relating to the practice of physical therapy, because the term we seek to define in this case is "physiotherapy," not "physical therapy." Even if we were to conclude that the

---

[2] The versions of *Webster's* dictionary available in 1927 did not include a definition of "physiotherapy."

legal definition of "physical therapy" excludes dry needling (which we do not decide here), we would not be compelled to conclude that the legislature intended for the two different terms to have the same legal meaning.

We do find other provisions of the same statute helpful to our analysis. *Perry*, 336 Or at 55-56. When the legislature added the category of physiotherapy to the definition of "chiropractic" in 1927, it also added the categories of "electrotherapy" and "hydrotherapy." *See* Or Laws 1927, ch 450, § 3.[3] Electrotherapy was defined at the time as "[t]he employment of electricity in the treatment of disease[,]" and hydrotherapy was defined as "[t]reatment of disease by means of water applied in various ways[.]" Stedman, *A Practical Medical Dictionary* at 308, 468. The addition of physiotherapy, electrotherapy, and hydrotherapy to the definition of "chiropractic" indicates an expansion of the practice to include not just "that system of adjusting with the hands the articulations of the bony framework of the human body," but also treatment methods that include other tools and sources of energy—those involved in physiotherapy (light, heat, air, water, and exercise), electrotherapy (electricity), and hydrotherapy (water).

With that understanding of the text and context of the statute, we turn to the question whether dry needling is a form of "physiotherapy," as that term is used in ORS

---

[3] In 1927, the law was amended to provide, in relevant part (with deletions in bracketed italics and additions in bold):

"(b) Chiropractic is defined as that system of adjusting **with the hand or hands** the articulations of the bony framework of the human body, [*especially asymmetries of the vertebrae, for the purpose of removing the cause of diseases by the correction of subluxations, thereby removing the pressure, impingement, or tension from the nerves having their passage between, through, or around the structures subluxated. The subluxation is corrected with the hands, using the bones of the body, more particularly the spinous and transverse processes of the vertebrae, as levers to which is applied a peculiar adjustic movement— the Chiropractic thrust*] **and the employment and practice of physiotherapy, electrotherapy and hydrotherapy; provided, no person practicing under this act shall write prescriptions for, or dispense drugs, practice optometry, or do major surgery; provided further, this act shall not be construed so as to interfere with or prevent the practice of, or use of massage, Swedish movement, physical culture, neuropathy, naturopathy, or other natural methods requiring the use of hand or hands."**

Or Laws 1915, ch 325, § 8; Or Laws 1927, ch 450, § 3.

684.010(2)(a), and is therefore "chiropractic." The challenged rule defines dry needling as "a technique used to evaluate and treat myofascial trigger points that uses a dry needle, without medication, that is inserted into a trigger point that has been identified by examination * * * with the goal of releasing/inactivating the trigger points, relieving pain and/or improving function." OAR 811-015-0036(1). A "trigger point" is a small, sensitive area that, when stimulated, gives rise to a reaction elsewhere in the body. *Webster's* at 2444 (defining "trigger point" as "a small trigger area[,]" where a "trigger area" is defined as "a sensitive area of the body stimulation of which gives rise to reaction elsewhere in the body * * *"). The term "myofascial" refers to a sheet of fibrous tissue surrounding and separating muscle tissue. *Stedman's Medical Dictionary* 1173, 647 (27th ed 2000) (defining "myofascial" as "[o]f or relating to the fascia surrounding and separating muscle tissue[,]" where "fascia" is defined as "[a] sheet of fibrous tissue that envelops the body beneath the skin; it also encloses muscles and groups of muscles, and separates their several layers or groups"). Thus, plainly stated, dry needling is the insertion of a needle, without medication, into the tissue surrounding or separating the muscles within an identified, sensitive area, to relieve pain or improve function.

Based on that definition of dry needling, the question reduces to whether the insertion of a needle into the tissue surrounding a muscle uses a "natural force" similar to "light, heat, air, water, and exercise"—that is, whether a needle is a natural force. We conclude that it is not. A needle used in dry needling is neither "natural" nor is it a "force." In contrast to light, heat, air, water, and exercise—as well as the electricity and water used in electrotherapy and hydrotherapy—a needle is a man-made *object*. Moreover, although the use of natural forces may involve man-made objects and devices, we find nothing in the definition of physiotherapy suggesting that the practice of physiotherapy would include the application of a man-made object directly to the internal tissues of a patient.

Because dry needling is not a form of physiotherapy, and respondents do not contend that it falls within any other category of treatment listed in ORS 684.010(2)(a), we

conclude that dry needling is not within the practice of chiropractic. Thus, the challenged rule exceeds the scope of the board's statutory authority and is invalid.

OAR 811-015-0036 held invalid.