460                December 13, 2023            No. 649

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

FREE OREGON, INC.
and Mandate Free Oregon, Inc.,
Oregon non-profit corporations;
Doctors for Freedom,
an unincorporated association;
Health Freedom Defense Fund;
and Tamara Dimmick; Rasa Sidagyte; Michelle Davis;
Lisa Nave; Charlotte Persinger; Chrystal Gervais;
Aaron Harris; Roy McGrath; Glenn Campbell;
Jessica Cox; Brittany Wilson; Joshua Williams;
and Molly Valdez, individuals,
*Petitioners,*

*v.*

OREGON HEALTH AUTHORITY,
*Respondent.*

Oregon Health Authority
A176977

Argued and submitted December 2, 2022; on respondent's motion to dismiss as moot filed July 5, 2023; and petitioners' response to motion to dismiss as moot filed July 12, 2023.

Tyler D. Smith argued the cause for petitioners. Also on the briefs were Yasha Renner and Tyler Smith & Associates, P.C.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Lagesen, Chief Judge, and Jacquot, Judge.*

_____

 * Jacquot, J., *vice* James, J. pro tempore.

LAGESEN, C. J.

Motion to dismiss as moot denied; *former* OAR 333-019-1010 (Jan 31, 2022) and *former* OAR 333-019-1030 (Jan 28, 2022) held valid.

**LAGESEN, C. J.**

This is a rule challenge under ORS 183.400. Petitioners seek judicial review of *former* OAR 333-019-1010 (Jan 31, 2022) and *former* OAR 333-019-1030 (Jan 28, 2022),[1] rules adopted by the Oregon Health Authority (OHA) that imposed COVID-19 vaccination requirements on providers and staff in healthcare settings, and on teachers and staff in school settings, respectively. The rules have since been repealed. Petitioners argue that OHA exceeded its statutory authority by adopting those rules and, furthermore, that the rules are preempted by federal law, violate the principle of separation of powers, violate due process requirements, and violate the Contract Clause of the Oregon Constitution. OHA responds that the repeal of the rules renders this proceeding moot and that all of petitioners' challenges fail. For the reasons that follow, we conclude that (1) OHA has not demonstrated that this proceeding is moot; and (2) petitioners' arguments do not present grounds for invalidating the rules. Accordingly, we hold the rules valid.

## I.   BACKGROUND

OHA first adopted OAR 333-019-1010 and OAR 333-019-1030 as temporary rules in 2021, then as permanent rules in 2022.[2] Identifying the statutory source of its authority to adopt both rules, OHA listed ORS 413.042, ORS 431A.010, and ORS 431.110, statutes which pertain specifically to OHA, and ORS 433.004, which pertains to public health and safety more generally.[3]

Relevant to petitioners' challenges, subsection 3 of both OAR 333-019-1010 and OAR 333-019-1030 instructed

---

[1] When this case began, the rules at issue had been promulgated as temporary rules. When OHA promulgated permanent rules, the court permitted petitioners to amend their petition for judicial review to challenge the permanent rules. This opinion addresses the permanent rules.

[2] OAR 333-019-1010 was in effect as a temporary rule from August 5, 2021, until January 31, 2022. OAR 333-019-1030 was in effect as a temporary rule from August 25, 2021, until January 28, 2022. Both rules were adopted as permanent in January 2022, temporarily suspended in May 2023, and repealed in June 2023.

[3] For OAR 333-019-1010, OHA also cited ORS 426.415, ORS 443.085, ORS 443.315, ORS 443.450, ORS 443.745, ORS 443.790, ORS 443.860, and ORS 441.025, which pertain to healthcare licensing and facility rules. Consideration of those statutes as sources of authority is not necessary to resolve this matter.

schools and healthcare facilities that they "may not employ, contract with, or accept the volunteer services of" individuals unless they "are fully vaccinated against COVID-19 or have an approved or accepted medical or religious exception." The rules also required those individuals to provide proof of vaccination or documentation of a medical or religious exception to their respective school or healthcare facility and set forth the standards applicable to the required documentation. OAR 333-019-1010(6) and OAR 333-019-1030(10). The rules further explained that employers of school and healthcare facility employees were responsible for "tak[ing] reasonable steps to ensure that unvaccinated" individuals with exceptions to the vaccination requirement "are protected from contracting and spreading COVID-19." OAR 333-019-1010(4); OAR 333-019-1030(4), (6). Additionally, each rule provided that employers "who violate any provision of this rule are subject to civil penalties of $500 per day per violation." OAR 333-019-1010(7); OAR 333-019-1030(11).

Petitioners assert that those rules are invalid on several distinct grounds. They first argue that the statutes cited by OHA as authority for the promulgation of the two rules do not grant such authority. Next, petitioners contend that the rules conflict with two other statutes: ORS 431.180 and ORS 433.416. Petitioners then assert that the rules are preempted by section 564 of the Food, Drug, and Cosmetic Act (FDCA), codified at 21 USC § 360bbb-3.[4] Petitioners further argue that the rules offend separation-of-powers principles. Petitioners also contend that the rules violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution by threatening public employees' protected property interest in continued employment by "mandat[ing] a predetermined outcome without any right to a hearing." Finally, petitioners argue that the rules impermissibly impair employment contracts, in violation of the Contract Clause of Article I, section 21, of the Oregon Constitution. For the reasons that follow, we reject each of petitioners' challenges and hold *former* OAR 333-019-1010 and *former* OAR 333-019-1030 valid.

---

[4] For the sake of readability, except where citing to specific sections of the statute, we refer to 21 USC § 360bbb-3 as "section 564" throughout this opinion.

## II.   MOOTNESS

Because the challenged rules have been repealed, we must first consider whether this proceeding is moot.

"Whether a case has become moot will depend on a factual determination regarding the potential impact of the court's decision on the parties." *Garges v. Premo*, 362 Or 797, 802, 421 P3d 345 (2018). If the party arguing against mootness "can identify 'practical effects or collateral consequences'" that flow from the outcome of their case, then the burden shifts to the party advocating mootness to show that the effects and consequences identified are either "'legally insufficient or factually incorrect.'" *Id.* (quoting *Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018)). "[I]n order to prevent a case from being considered moot, a 'collateral consequence' must be something beyond mere speculation. As we have observed, a collateral consequence must have a significant probability of actually occurring; a speculative or merely possible effect is not enough." *Johnson v. Premo*, 302 Or App 578, 592, 461 P3d 985 (2020) (internal quotation marks and citation omitted).

OHA argues that petitioners' challenge to OAR 333-019-1010 and OAR 333-019-1030 is moot because both rules were first suspended by temporary administrative order, then ultimately repealed by permanent order. Petitioners argue that the challenge is not moot "because a legal determination invalidating the rules would create binding precedent" that would affect prospective future litigation and one currently pending lawsuit.

OHA is correct that the repeal of rules ordinarily renders a rule challenge moot. *See, e.g.*, *Mooney v. Oregon Health Authority*, 314 Or App 809, 811, 500 P3d 79 (2021) ("We long have held that the repeal or replacement of an administrative rule means an ORS 183.400 challenge seeking to invalidate the displaced rule is moot."). However, in this instance, petitioner Cox asserts that a determination of the validity of the rules would affect an ongoing proceeding, in which petitioner challenges her employer's decision to place her on unpaid leave based on her failure to obtain a vaccination or exemption as required by OAR 333-019-1030.

OHA has not controverted petitioners' assertion that a decision by this court holding the challenged rules invalid could affect petitioner Cox's pending lawsuit.[5] Under the burden-shifting framework provided by the Supreme Court in *Garges*, 362 Or at 802, it was OHA's burden to disprove those consequences once identified, and OHA did not attempt to do so. Accordingly, OHA has not met its burden to show mootness, at least with respect to OAR 333-019-1030. Because the arguments with respect to the two rules are identical, such that dismissing the petition with respect to OAR 333-019-1010 would have no practical effect on our resolution of them, we proceed to consider those arguments.

## III.   ANALYSIS

To start, we observe that the scope of our review under ORS 183.400 is limited. "[I]n reviewing a rule challenge under [ORS 183.400], we may declare the rule invalid only if we conclude that it violates constitutional provisions, exceeds the statutory authority of the agency that adopted the rule, or was adopted without complying with rulemaking procedures." *BP West Coast Products, LLP v. Dept. of Justice*, 284 Or App 723, 725-26, 396 P3d 244, *rev den*, 361 Or 800 (2017) (internal quotation marks omitted). Where a claim is that a rule exceeds an agency's statutory authority or violates a constitutional provision, "[j]udicial review is limited under ORS 183.400 to the face of the rule and the law pertinent to it." *Wolf v. Oregon Lottery Commission*, 344 Or 345, 355, 182 P3d 180 (2008). This means that if the resolution of a particular constitutional or statutory challenge to a rule would require the development of a factual record, the challenge cannot be resolved in a proceeding under ORS 183.400. *Smith v. Dept. of Corrections*, 219 Or App 192,

---

[5] Petitioners' claim that our decision will impact prospective litigation is not sufficient to carry their initial burden of identifying "practical effects or collateral consequences" that flow from the outcome of their rule challenge. *See, e.g.*, *Joint Council of Teamsters #37 v. BOLI*, 168 Or App 398, 413, 11 P3d 247, *rev den*, 331 Or 429 (2000) ("The mere possibility that our invalidation of [an order] might have the practical effect of informing another court's consideration of the validity of [that order] in a future action that petitioners *could* file, but have not filed—and may never file—is not 'effectual relief' for purposes of mootness.") (emphasis in original); *Johnson*, 302 Or App at 592 ("[A] speculative or merely possible effect is not enough."). As explained above, however, the likelihood of this decision affecting current litigation is sufficient.

197-98, 182 P3d 250 (2008), *rev den*, 345 Or 690, *cert den*, 557 US 923 (2009).

Petitioners argue that two of the three grounds for invalidating rules are present here: that they violate constitutional provisions and that they exceed OHA's statutory authority. "Constitutional issues should not be decided when there is an adequate statutory basis for decision," so we begin with the statutory arguments. *Douglas County v. Briggs*, 286 Or 151, 156, 593 P2d 1115 (1979).

A.   *OHA did not exceed its statutory authority.*

As mentioned, in a proceeding under ORS 183.400 to determine whether a challenged rule exceeds an agency's statutory authority, "we may consider only the 'wording of the rule itself (read in context) and the statutory provisions authorizing the rule.'" *Assn. of Acupuncture v. Bd. of Chiropractic Examiners*, 260 Or App 676, 678, 320 P3d 575 (2014) (quoting *Wolf*, 344 Or at 355). Based on those sources, we determine whether the adoption of the rule exceeded the adopting agency's statutory authority by examining whether the agency "'departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute.'" *Id.* (quoting *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984)). To make that determination, we ascertain the legislature's intent by examining the text, context, and pertinent legislative history of the relevant statutes. *Id.*; *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Petitioners contend that the statutes cited by OHA as authority for the challenged rules did not provide the necessary authority, that the rules contravened ORS 431.180 and ORS 433.416, and that the rules are preempted by federal law because they contravene 21 USC § 360bbb-3. We address each argument in turn.

1.   *OHA had statutory authority to adopt the rules.*

As explained above, OHA cited ORS 413.042, ORS 431A.010, ORS 431.110, and ORS 433.004 as authority for its adoption of OAR 333-019-1010 and OAR 333-019-1030. Our analysis begins and ends with ORS 413.042 and ORS

431.110 because those two statutes provided OHA with sufficient authority to adopt both rules.

ORS 413.042 provides, "In accordance with applicable provisions of ORS chapter 183, the Director of the Oregon Health Authority may adopt rules necessary for the administration of the laws that the Oregon Health Authority is charged with administering." That text, we have explained, unequivocally gives "OHA broad rulemaking authority to carry out the statutes it is charged with administering." *Adamson v. Oregon Health Authority*, 289 Or App 501, 502, 505, 412 P3d 1193 (2017). ORS 413.110 is one of the statutes that OHA is charged with administering. It directs, among other things, that OHA shall:

> "(1)  Have direct supervision of all matters relating to the preservation of life and health of the people of this state.
>
> "* * * * *
>
> "(7)  Have full power in the control of all communicable diseases."

Those provisions unambiguously grant OHA the authority to promulgate the challenged rules. Put simply, the legislature granted OHA "full power" to control communicable diseases, and to promulgate rules necessary for doing so. On their face, the challenged rules are rules aimed at controlling the communicable disease of COVID-19. OHA, therefore, had the authority to promulgate them.

Petitioners' main argument to the contrary is that the statutes do not specifically refer to vaccinations or otherwise specifically grant OHA the authority to promulgate rules related to vaccines. In petitioners' view, the failure to specifically identify vaccines in the authorizing statutes supports the inference that the legislature did not intend to allow OHA to fulfill its obligation to control communicable diseases by promulgating vaccine rules. Had the legislature identified specific measures available to OHA to control communicable diseases but omitted a reference to vaccines, that argument might have some force. Instead, though, the legislature opted to grant OHA "full power in the control

of communicable diseases," without restricting the methods available to OHA.

Beyond that, vaccines long have played a role in controlling communicable diseases in the United States and, in addition, it has long been recognized that states have the police-power authority to impose vaccine requirements when health officials determine such requirements are necessary to protect the public health or public safety. *See Jacobson v. Massachusetts*, 197 US 11, 25-39, 25 S Ct 358, 49 L Ed 643 (1905) (discussing states' police-power authority to control disease, including controlling smallpox through vaccine requirements). In view of that history, had the legislature intended to prohibit OHA from employing that common tool in discharging its mission to control communicable diseases, we think the legislature most likely would have made that intended limitation explicit. The fact that the statutes governing OHA contain no such restriction further weighs in favor of the conclusion that the legislature intended to grant OHA broad authority to adopt rules aimed at controlling communicable diseases, including rules requiring vaccines. "It is not our role to add limitations that the legislature itself did not include." *PGE v. Alfalfa Solar I, LLC*, 323 Or App 531, 537, 524 P3d 124, *rev den*, 371 Or 308 (2023) (citing ORS 174.010). We therefore reject petitioners' contrary argument.

2. *The rules on their face do not conflict with ORS 431.180.*

Petitioners next assert that OHA exceeded its statutory authority in adopting the rules because, in their view, the rules conflict with ORS 431.180. That statute provides:

"(1)   Nothing in ORS 431.001 to 431.550 and 431.990 or any other public health law of this state shall be construed as authorizing the Oregon Health Authority or its representatives, or any local public health authority or its representatives, to interfere in any manner with an individual's right to select the physician, physician assistant, naturopathic physician or nurse practitioner of the individual's choice or the individual's choice of mode of treatment, nor as interfering with the practice of a person whose religion treats or administers sick or suffering people by purely spiritual means.

"(2)   This section does not apply to the laws of this state imposing sanitary requirements or rules adopted under the laws of this state imposing sanitary requirements."

Petitioners assert that, because "the legislature has expressly withdrawn certain subjects from the [OHA's] purview, namely, an individual's private healthcare choices," the challenged rules, which institute vaccine requirements for certain individuals in school and healthcare settings, are "in derogation of ORS 431.180(1) and thus exceed OHA's statutory authority." In petitioners' view, the rules "interfere" with the "personal healthcare choices" of healthcare facility and school staff, which the legislature explicitly prohibits under ORS 431.180(1). Petitioners further assert that the rules do not constitute "sanitary regulations" under ORS 431.180(2). After pointing to dictionary definitions of the words "sanitary" and "sanitation" and to other examples of sanitary regulations, petitioners assert that "[i]t should be obvious that such medical mandates [as the challenged rules] do not qualify as sanitary requirements."

In response, OHA points out that the rules do not require any individual to obtain a vaccine or otherwise choose a particular form of treatment. Rather, the rules, by their terms, condition the ability to work in a particular setting on a person having obtained a vaccine, or having obtained a medical or religious exemption. OAR 333-019-1010(3); OAR 333-019-1030(3). OHA reasons that because individuals remain free to choose whether to have a vaccine under the terms of the rules, the rules themselves do not "interfere" with individuals' ability to choose their preferred mode of treatment for purposes of ORS 431.180. Alternatively, OHA asserts that the rules constitute "sanitary requirements" for purposes of ORS 431.180(2), when the word "sanitary" is properly understood in the way the legislature that originally enacted ORS 431.180 would have understood the word. For the reasons that follow, we agree with OHA.

The parties' dispute centers on the meaning of the terms "interfere" and "sanitary" in ORS 431.180. To resolve the dispute, we consider those terms in context, along with any relevant legislative history. *State v. C. P.*, 371 Or 512,

517, ___ P3d ____ (2023). "In applying that methodology, we attempt to discern the intent of the legislature that enacted the statute." *Id*.

In this case, as the parties recognize, the legislature that enacted what is now ORS 431.180 is the 1919 legislature. Or Laws 1919, ch 265, § 151. When the legislature adopted the Oregon Revised Statutes in 1953, following the statutory cleanup conducted by the statutory revisions counsel, it codified that prior law at ORS 431.180, *see* ORS 431.180 (1953), where it has remained ever since. Although it has been amended on occasion, none of the amendments indicate an intention to change the meaning of the statute as enacted in 1919. In particular, the key terms at issue have been a part of the statute since 1919. Accordingly, we examine text and context with the objective of assessing the intention of the 1919 legislature.[6]

As originally enacted, what is now ORS 431.180 provided:

> "Nothing in this act shall be construed to empower or authorize the state board of health * * * to interfere in any manner with the individual's right to select the physician or mode of treatment of his choice * * *; providing, however, that sanitary laws, rules and regulations are complied with."

Or Laws 1919, ch 265, § 151.[7] At that time, "interfere" commonly meant "[t]o enter into, or take a part in, the concerns of others; to intermeddle; interpose; intervene," much as it does today. *Webster's New Int'l Dictionary* 1125-26 (1st ed 1910); *Webster's Third New Int'l Dictionary* 1178 (unabridged ed 2002) (defining "interfere" pertinently as "to enter into or take part in the concerns of others : INTERMEDDLE, INTERPOSE, INTERVENE"). "Sanitary," at the time, generally referred to

---

[6] In this instance, there is no legislative history to consider because those materials were destroyed in the 1935 fire in the State Capitol. *See State v. Wolf*, 260 Or App 414, 423, 317 P3d 377 (2013).

[7] ORS 431.180 was restructured to its present form in 2015. Or Laws 2015, ch 736, § 36. The parties have not supplied us with legislative history or other information suggesting that the 2015 restructuring was intended to alter the meaning of the statute, and our own research has not yielded any indication that the 2015 legislature intended to change the meaning of the statute or employ its terms differently from the 1919 legislature's use of those terms.

health. *Webster's* defined "sanitary" as "[o]f or pertaining to health; designed to secure or preserve health; relating to the preservation or restoration of health; hygienic, as *sanitary* regulations; *sanitary* science." *Webster's New Int'l Dictionary* 1878 (1st ed 1910) (emphasis in original). Other dictionaries supplied similar definitions. *The Century Dictionary* defined "sanitary" as "[p]ertaining to health or hygiene or the preservation of health; hygienic; health." *The Century Dictionary* 5335 (1911). The *Cyclopedic Law Dictionary* defined "sanitary" as "[p]ertaining to, or designed to secure, sanity or health; relating to the preservation of health." *Cyclopedic Law Dictionary* 912 (2nd ed 1922). In support of that definition, it cited *People ex rel Longenecker v. Nelson*, 133 Ill 565, 579, 27 NE 217, 219 (1890), a case which addressed the meaning of the term "sanitary" in the context of the phrase "sanitary district," and concluded that "sanitary" referred to the preservation and protection of public health. *Id*.

Giving "interfere" and "sanitary" their ordinary meanings in 1919, it would appear that the legislature intended what is now ORS 431.180 to prohibit health officials from intermeddling in the medical decisions of individuals, but to preserve the authority of public health officials to impose general measures to safeguard public health.

Context supports that conclusion. The context of a statute includes other statutes enacted at the same time. *Hernandez v. Catholic Health Initiatives*, 311 Or App 70, 74, 490 P3d 166 (2021). At the same time that it enacted the prohibition on interfering with an individual's choice of treatment, the legislature enacted a number of broad public health provisions, including provisions authorizing health authorities to adopt measures to address communicable diseases. For example, the legislature conferred on the state board of health the power to "make or enforce such rules and regulations as such board may deem wise and necessary for protection of the health of the people of the community or the state" during epidemics. Or Laws 1919, ch 264, § 11. Relatedly, the legislature specified that "[n]o pupil, teacher or janitor shall be permitted to attend any private parochial or public school when afflicted with any communicable disease * * * except in strict conformity with the rules

and regulations of the state board of health." Or Laws 1919, ch 264, § 23. Given that context, and the common meaning of the word "sanitary" at the time, we think it likely that the legislature intended the reference to "sanitary" in what is now ORS 431.180 as a clarification that the right to choose one's own mode of treatment was subject to the general public health laws. If the statute is read as petitioners read it, to exempt individuals from complying with public health laws when such laws impose requirements at odds with their preferred choices, then that would seriously undermine the effectiveness of public health measures.

Reading ORS 431.180 as we have—to prohibit health officials from intermeddling in the medical decisions of individuals but to preserve the authority of those officials to implement and enforce measures to safeguard public health—we are unable to conclude that the challenged rules, on their face, conflict with ORS 431.180. On their face, the rules do not permit health officials to intermeddle or intervene in an individual's healthcare decisions; whether to obtain a vaccine is left entirely to the individual.

To be sure, the consequences that the rules attach to the choice not to obtain a vaccine or seek an exemption can make an individual's decision whether to obtain a vaccine a very difficult personal decision. Those consequences are exclusion from some workplaces, which is a significant burden. The rules nevertheless leave the decision whether to obtain a vaccination, as challenging as it can be, solely in the hands of the individual, and do not place it in the hands of health officials.

Finally, even if the consequences that the rules attach to the failure to obtain a vaccine (or an exemption) could qualify as "interfer[ing]" with an individual's choice of medical or spiritual treatment, those consequences—exclusion from working in healthcare or school settings, settings with vulnerable populations—are ones that are on their face aimed at preserving public health, so as to qualify as "sanitary" requirements, as the legislature that originally enacted what is now ORS 431.180 would have understood the term "sanitary." In that regard, it is worth observing that it was not uncommon to refer to measures aimed at

controlling the spread of disease through isolation or sep-aration—such as quarantines—as "sanitary" measures at the time this provision was first enacted. *See, e.g.*, *Smiley v. MacDonald*, 60 NW 355, 358 (Neb 1894) (rejecting assertion that government exceeded its power by entering into a gar-bage-removal contract with a private contractor, explaining that "[t]he alleged excess of power is a mere sanitary mea-sure, as obviously so as the familiar and necessary quar-antine for the detention of persons exposed to contagious diseases").

For these reasons, we are persuaded that the chal-lenged rules do not, on their face, conflict with ORS 431.180. As we have mentioned, the scope of our review is limited to an evaluation of whether the rules, on their face, con-flict with ORS 431.180. We are not called upon, and are not permitted within this proceeding, to evaluate the extent to which a particular application of the rules might contravene ORS 431.180, and we express no opinion regarding the via-bility of any such as-applied challenge.

3.   *The rules do not violate ORS 433.416.*

ORS 433.416(1) mandates that employers of "health care worker[s] at risk of contracting an infectious disease in the course of employment" provide those employees "preven-tive immunization for infectious disease if" the "immuniza-tion is available and is medically appropriate." Subsection 3 provides, "A worker shall not be required as a condition of work to be immunized under this section, *unless such immu-nization is otherwise required by federal or state law, rule or regulation.*" (Emphasis added.)

Petitioners argue that "[t]he exception swallows the rule under this construction, erasing subsection (3) altogether." That might be true if OHA had relied on ORS 433.416(3) as the source of its statutory authority to promul-gate the challenged rules. As discussed above, however, OHA had authority to adopt the two rules under ORS 413.042 and ORS 431.110 and, moreover, did not rely on ORS 433.416 as an authorizing statute. Accordingly, the rules at issue are state rules that "otherwise" require the vaccinations at issue and, therefore, do not contravene ORS 433.416(3). In

other words, we agree with the United States District Court for the District of Oregon that

> "at the time [relevant to this matter], there was a state rule requiring [COVID-19] immunization, OAR 333-019-1010. Therefore, [p]laintiff's case falls under the second clause of [ORS 433.416(3)]," [which states,] "'A worker shall not be required as a condition of work to be immunized under this section, *unless such immunization is otherwise required by federal or state law, rule or regulation*.'"

*Morris v. Asante Health Sys.*, 2023 WL 3766615, *21 (D Or 2023) (emphasis in original).

4.   *The rules are not preempted by 21 USC § 360bbb-3.*

The Supremacy Clause of Article VI of the United States Constitution provides, in relevant part, that "the Laws of the United States which shall be made in Pursuance [of the United States Constitution] *** shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Preemption of state law by federal law follows when the federal law includes an express preemption provision, when a congressional statutory scheme "so completely occupies the field" of a specific subject matter that its preemption intent is implied, and when preemption intent is implied by "an actual conflict between state and federal law." *Willis v. Winters*, 350 Or 299, 308, 253 P3d 1058 (2011) (citing *Crosby v. National Foreign Trade Council*, 530 US 363, 372, 120 S Ct 2288, 147 L Ed 2d 352 (2000)).

Petitioners point to FDCA section 564 as being in direct conflict with, and thus preempting, the challenged rules. Section 564 authorizes the Food and Drug Administration (FDA) to issue an "emergency use" authorization (EUA) for a medical product, such as a vaccine, under certain emergency circumstances. 21 USC § 360bbb-3(a) (1). That authorization permits the product to be introduced into interstate commerce and administered to individuals even when FDA has not approved the product for more general distribution pursuant to its standard review process. *Id*. Section 564 directs FDA, "to the extent practicable" given the emergency circumstances and "as the [agency]

finds necessary or appropriate to protect the public health," to impose "[a]ppropriate" conditions on each EUA. 21 USC § 360bbb-3(e)(1)(A). Some of those conditions are designed to ensure that recipients of the product "are informed" of certain things, including "the option to accept or refuse administration of the product." 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

We understand petitioners to put forth two arguments to support their contention that the rules contravene section 564: (1) administration of an EUA-approved product requires recipients to supply informed consent, which the contested rules, which allegedly mandate vaccination by an EUA product, do not allow; and (2) prospective recipients of an EUA product must be informed of their right to refuse the product, a requirement which the contested rules violate because they make the vaccine a condition of employment.

The Sixth Circuit recently addressed and rejected identical arguments in *Norris v. Stanley*, 73 F4th 431, 438 (6th Cir 2023), and we find that court's reasoning persuasive. In *Norris*, university employees challenged their employer's implementation and enforcement of a COVID-19 vaccine requirement. 73 F4th at 433. As petitioners do here, the plaintiffs argued that the university policy conflicted with section 564 and, consequently, was preempted. *Id.* at 438. The court disagreed, explaining that

> "[t]he EUA statute instructs that, 'to the extent practicable given the applicable circumstances,' the *Secretary of Health and Human Services* (HHS) 'shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization *** as the Secretary finds necessary or appropriate to protect the public health.'"

*Id.* (quoting 21 USC § 360bbb-3(e)(1)(A) (emphasis added)). Those conditions include

> "ensur[ing] that individuals to whom the product is administered are informed *** of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks."

21 USC § 360bbb-3(e)(1)(A)(ii)(III). The court explained that that condition "addresses the interaction between the medical provider and the person receiving the vaccine, not the interaction between an employer and an employee receiving a vaccine." 73 F4th at 438 (citing 21 USC § 360bbb-3(e)(1)(A)(ii)). In fact, the statute requires those conditions "for a person who carries out any activity for which authorization is issued," such as administering the product. *See id.* (citing 21 USC § 360bbb-3(e)(1)(A)). The court explained, "The statute is meant to ensure patients' consent to the pharmaceutical they are receiving, but this does not mean that [the university] cannot require vaccination as a term of employment." *Id.*

For the same reasons, we reject petitioners' preemption argument. That is, we conclude that section 564 does not conflict with the OHA rules because OHA is not administering the responsibilities of HHS and is not a medical provider that administers the EUA vaccines. Consequently, OHA's rules, which impose public health requirements in specific work environments, are not preempted by section 564.

B.    *Petitioners have failed to demonstrate that the rules violate the state or    federal constitution.*

    1.    *Petitioners' separation-of-powers argument is inadequately developed to permit review.*

Without pointing to any constitutional provision or the case law addressing separation-of-powers principles under the Oregon Constitution, petitioners assert that the OHA rules "are unconstitutional because they conflict with and abrogate statutes," as an agency, "OHA does not have legislative authority," and, as a result, the OHA rules are a violation of the separation-of-powers principle. Noting petitioners' failure to develop an argument under applicable authority and relying on *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700-01 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003), OHA argues that we "should therefore decline to address petitioners' separation-of-powers argument because it is insufficiently developed." We agree with OHA. On its face, petitioners' argument is in tension with a long-standing

understanding that a state legislature's police power to establish and enforce measures to safeguard public health is a delegable one.[8] In view of petitioners' failure to develop an argument that addresses the applicable law or the history of conferring broad power on health boards, we do not address that question.

> 2.  *Petitioners' due process and contract clause challenges are outside the scope of review under ORS 183.400.*

Finally, petitioners argue that the OHA rules violate the Due Process Clause of the United States Constitution and the Contract Clause of the Oregon Constitution. Both arguments relate to the impact the challenged rules have on petitioners' employment contracts and, in the case of the Due Process Clause, on their asserted protected property interests in continued employment. On their face, though, the rules do not address or affect contracts and, to the extent petitioners assert that the rules impair particular contracts and potentially protected property interests, resolution of that issue is beyond the scope of an ORS 183.400 rule challenge. *See AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992) ("Aside from questions that

---

[8]  As Judge Cooley observed in his treatise on state constitutions, the state police power encompasses the authority to make "quarantine regulations and health laws of every description" that "are or may be sometimes carried to the extent of ordering the destruction of private property when infected with disease or otherwise dangerous." Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union,* 584 (1st ed 1868). Cooley noted that such "regulations have generally passed unchallenged." *Id*. at 584-85. Amplifying his discussion of the issue a few years later, Judge Cooley observed that it was common to confer broad powers on boards of health:

> "It is usual, by either general law or by municipal charters, to confer very extensive powers on local boards of health, under which, when acting in good faith, they may justify themselves in taking possession of, purifying, or even destroying, the buildings or other property of the citizen, when the public health or comfort demands such strong measures.
>
> "* * * * *
>
> "And they may unquestionably be vested with very large powers to establish pest-houses, and make very stringent regulations to prevent the spread of contagious diseases."

Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union, 584 n 2 (3rd ed 1874) (citing, among other cases, Coe v. Schultz, 47 Barb 64 (1866), for proposition that power to pass sanitary regulations could be conferred on a sanitary board).

might arise concerning the facts surrounding the process of adopting a rule[,] *** judicial review under ORS 183.400 is limited to the face of the rule and the law pertinent to it.").

## IV.   CONCLUSION

For the reasons explained, we reject the challenges to *former* OAR 333-019-1010 (January 31, 2022) and *former* OAR 333-019-1030 (January 28, 2022), raised in this proceeding.

Motion to dismiss as moot denied; *former* OAR 333-019-1010 (Jan 31, 2022) and *former* OAR 333-019-1030 (Jan 28, 2022) held valid.